IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
–FORT MYERS DIVISION

–CIVIL ACTION

VINCENT TALLO, an individual, and
JAMES A. WILHELM, an individual,
   –Plaintiff(s)

Case No. 2:09-cv-792 -FtM- __

v.

ALAN KOLAK, and EDWARD SCHLIFF,
and MATTHEW MILLS individuals and as
police officers, employees, agents for CAPE
CORAL POLICE DEPARTMENT, a municipal
police agency, and CITY OF CAPE CORAL, a
municipal corporation, and RICHARD ORIN
OPPERMANN d/b/a ALPHA OMEGA
BAIL BONDS, and MATTHEW K. MCDOWELL,
a licensed Florida Attorney,
   –Defendant(s)
_____ /

CORRECTED AMENDED COMPLAINT

NOW COMES, Vincent Tallo, a 72 year old male, and James A. Wilhelm, a 62 year old
man, collectively ["Plaintiff(s)"] individually and on behalf of other persons similarly situated
and sues ALAN KOLAK, and EDWARD SCHLIFF, individually and as police officer(s),
employees, agents for CAPE CORAL POLICE DEPARTMENT, a municipal police agency, and
CITY OF CAPE CORAL, a municipal corporation, and RICHARD ORIN OPPERMANN d/b/a
ALPHA OMEGA BAIL BONDS, and MATTHEW K. MCDOWELL, a licensed Florida Attorney,
alleges as follows:

I. Jurisdiction.

1.      THIS IS an action for money damages brought pursuant to 42 U.S.C. §§1983 and 1988,
and the FOURTH and FOURTEENTH Amendments to the United States Constitution
and under Article I, §§ 9, 12, and 16 of the Florida Constitution and under the Common
law of the State of Florida against Officer Edward Schliff, Sgt. Alan Kolak, and Officer
Matthew Mills employees of the cape Coral Police Department (CCPD), individually and
as police officers for their respective City governments the City Of Cape Coral and

jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 (federal Question Jurisdiction) and 1343 and 42 U.S.C. 1983 as amended and known as the "Civil Rights Act; " and on the pendant jurisdiction of this court on claims arising under state law. This court has pendant jurisdiction under 28 U.S.C. § 1332, 1343(a)(4) and 1367(a); various state common law and statutory law including, ARTICLE I, §§2 and 9 and the Equal protection Clause of the Fourteenth Amendment to the United States Constitution.

2.      Further, this action is brought pursuant to the anti-conspiracy provisions of 42 U.S.C.§ 1985 sections 501 and 504 of the Rehabilitation Act of 1973 as amended, and the Florida's Civil Rights Act and the Lee County Equal Opportunity Act.

3.      Attorney fees and punitive damages may be awarded under 42 U.S.C. 1983, 18 U.S.C. 1985 - §§501-504; and in addition pursuant to various state law including §§ 57.105;

4.      Further, declaratory relief is requested under the Federal Declaratory Judgment Act 28 U.S.C. §§2201; 2202.

5.      This is brought under state law pursuant to Fla. Stats. §768.28 for negligence.

6.      Additionally, there is a pendant action is brought under Fla. Stat. §501.204 et seq. Florida Deceptive Unfair Trade Practices Act by James A. Wilhelm against Alpha Omega Bail Bonds and his former trial attorney Matthew K. MacDowell for violations of the act and professional malpractice brought by Plaintiff James Wilhelm against his former attorney Matthew K. MacDowell.

7.      Venue is proper in the United States District Court for the Middle District of Florida where defendants and individuals are situated, reside and or maintained operations or conducted business in the Southwest Florida area particularly in Lee County within the state of Florida.

## II. <u>INTRODUCTION</u>

8.      This is a joint suit between persons aggrieved by the same MULTI- JURISDICTIONAL TASK FORCE and police agency and city as named in this complaint.  It is alleged that police agency defendants and other unknown police officers, through a multi jurisdictional task force on March 3, 2009 and again on September 4, 2009, made an

unreasonable stop and seizure of the person of James Wilhelm, and Vincent Tallo, and others, seizure of property, and such acts as alleged herein violated each plaintiff of his rights under the FOURTH and FOURTEENTH amendments to the United States Constitution and under Article I, Sections 9, 12 and 16 of the Florida Constitution and these defendants assaulted, battered and abused processes of law against plaintiffs.   IT is further alleged that these violations and torts occurred as a result of the policies, customs or practices of the defendant police Department and City.

### III. Parties

9.    Plaintiff(S) ARE RESIDENTS, in the County of Lee, State of Florida.  Neither plaintiff has any criminal history, owes any outstanding fine or other money to the municipalities, state or federal government.

10.    Defendant CITY OF CAPE CORAL ["COCC" or "CAPE CORAL"] is a municipal corporation located in Lee County, Florida. And the public employer of Officer/Sgt. Alan Kolak.

11.    Defendant CAPE CORAL POLICE DEPARTMENT  ["CCPD"] is a municipal police agency operating under the municipal charter of the defendant Cape Coral and is an extension of municipal government as a department or agency, that provides law enforcement within the jurisdictional limit of the CITY.

12.    Upon information and belief, Alan Kolak is a police officer and is an employee and otherwise an agent of the City of CAPE CORAL.

13.    Upon information and belief, Matthew Mills is a police officer and is an employee and otherwise an agent of the City of Cape Coral.

14.    Upon information and belief, Edward Schliff is a police officer and is an employee and otherwise an agent of the City of CAPE CORAL.

15.    MULTI-JURISDICTIONAL JOINT TASK FORCE is operating as an agency or department within the Executive branch of the State of Florida and for all purposes of this complaint may be exempt from suit under Section 1983 of the Civil Rights act but is

subject to this courts pendant jurisdiction under 28 U. S. C. § 1332, 1343(a)(4) and 1367(a).  The Department is subject to liability under Fla. Stats. Section 768.28 et seq. for negligence.

16.  DEFENDANT officers were at times relevant to this complaint duly appointed and acting officers of the Cape Coral Police Department under the control of the City of Cape Coral and or  acting under color of state law, statutes, ordinances, regulations, policies, customs and usages of city and police department.

17.  DEFENDANT police officers were at times working with a Multi-Jurisdictional Task Force comprised of various police agencies including defendants and the cities of Cape Coral and Fort Myers and operating under the color of state law, statutes ordinances, regulations, policies and customs and usages of their respective defendant cities and departments.

18.  Where the police officers acted intentionally, 'maliciously or in bad faith,' and violated certain well established federally protected rights that were well known to the officers at the time including freedom of movement, association, and liberty interests they are individually liable and in the alternative, where said officers operated negligently, each are not liable to Plaintiff but are protected by Florida Statute 768.28.

19.  Where the Cities and Police Department defendants employed, trained and supervised the individual officers and each acted in an official capacity within the parameters of their office, these municipal and subdivisions are not liable to Plaintiffs except to the extent each individual officer was negligent in the performance of his duty or the agencies themselves were negligent in practice and policy however in the alternative if each officer acted ultra vires or intentionally, maliciously or in bad faith, these state municipal corporations and departments are immune under Fla. Stats. §768.28 but are liable under 42 U.S. C. section 1983.

20.  Defendant RICHARD ORIN OPPERMANN d/b/a , ALPHA OMEGA BAIL BONDS, is an individual and licensed bond agent doing business as a bail bondsman in southwest Florida in Lee County, and at all times relevant to this complaint had an illicit agreement to provide referrals with a licensed attorney contrary to Florida law.

21.    Defendant MATTHEW K. MCDOWELL, a licensed Florida Attorney, is an individual and doing business as an attorney in southwest Florida, Lee County and had an illicit agreement with Richard Orin Oppermann, d/b/a Alpha Omega Bail Bonds for referrals.

## IV.  Common Facts –

22.    At all times relevant to this complaint, Tallo is a 72 year old male with no criminal history or negative contacts with law enforcement and no traffic citations.

23.    On or about September 4, 2009, at approximately 8:05PM, Tallo was having dinner with some friends including his girlfriend Mary DeBennedetta ["Mary"], at the American Legion Club ["Club"] in the City of Cape Coral.  He had one beer with his dinner.

24.    After an evening of dancing and dining with their friends, Tallo and Mary left the club at about 11:00PM in his late model blue BMW and drove in the direction of Country Club Blvd. to Mary's home on 607 S.E. 30th Lane, Cape Coral, (Lee COUNTY) Florida.

25.    Mills asked Tallo where he was coming from and Tallo responded 'the American Legion.'

26.    Mills then asked Tallo 'if he had anything to drink' while he shone a bright flashlight into the car and in Tallo's eyes.  Tallo told the officer he had 'one beer' with his dinner.

27.    Mills then asked Tallo to follow his finger without moving his head while the light was shone in his eyes and Tallo complied.

28.    After several minutes of shining the flash light in Tallo's eyes, Mills ordered Tallo out of his car and told him to put his arms behind his back and that he was under arrest for DUI.

29.    Shocked and confused, Both Mary and Tallo explained that Tallo  had had an operation on his eyes a few weeks prior.

30.    Mary was also ordered out of the vehicle by Mills and another officer got into Tallo's car and drove it away.

31.    Mills grabbed Tallo as he stepped out of the car,  put handcuffs on him an led him to another area within the check point perimeter.  Mills then removed the cuffs and turned Tallo over to another police officer who then explained the field sobriety exercises to Tallo on video.

32.    Tallo was given some field exercises by a police officer; the Horizontal Nystagmus test,

one leg stand and walk and turn and was marked off by the officers as follows:

   a.   HGYN- he was able to follow the stimulus, his eyes tracked equally and his pupils were of equal size however his vertical gaze nystagmus was noted to be negative, he had lack smooth pursuit in his left and right eyes, a distinct nystagmus was noted at maximum deviation in both eyes and onset of nystagmus was prior to 45 degrees in both eyes;

   b.   ONE LEG STAND - Tallo was asked to stand on one leg for a period of time with his hands at his sides however, the officer recorded that he observed that used his arms for balance, and swayed while balancing and only kept his leg up for about 11 seconds.

   c.   WALK AND TURN - the officer recorded that he observed Tallo step off the line missed heel to toe and raised his arms and turned in the opposite direction as directed after only 9 steps.

33.   After the exercises were completed, Tallo again was placed under arrest and handcuffed. Tallo was incensed and requested a breath test.

34.   Tallo was taken to an area set up for breath testing and after waiting twenty minutes he blew a 0.00 three times.

35.   Police were perplexed and began an investigation into whether Tallo had any drugs in his system.

36.   Tallo again explained that he had had an operation several weeks earlier and had discontinued the use of any medicine after the first day. He stated he had not taken any drugs that day or in the three weeks prior.

37.   Tallo stated it was his habit not to take any medications and was proud of the fact that at his age, he was not taking any drugs.

38.   Mary was questioned by police on whether her boyfriend Tallo had taken any prescriptive medication and she stated, 'No. Vince doesn't believe in taking any more medication than necessary and prides himself in not taking medication. He invariably takes no medications.

39.   Notwithstanding a negative response to their investigation, police requested that Tallo– while he was still in handcuffs and not free to leave–to take a urine test and he agreed.

40.   Police then brought Tallo to another area where they handed him a test cup and told him to 'pee in the cup' however they did not remove his handcuffs and several police officers were laughing at his ill fated attempts. After a few minutes of levity, one of the officers removed his handcuffs and he filled the cup.

41.   Based upon information and belief, Sgt. Alan Kolak was in charge of the DUI check point and is a DRE officer qualified to perform drug analysis testing and was called in to perform a presumptive drug test on a sample of Tallo's urine.

42.   Based upon information and belief, Defendant Alan Kolak, either
   a.   Negligently represented the test as being presumptive for the presence of 'drugs;' or
   b.   Intentionally, misrepresented the test results as being positive for the presence of drugs;

43.   After testing Tallo's urine and finding a presence of drugs, Officer Kolak released Tallo, giving him back his license but telling him he cannot drive his vehicle.

44.   Officer Mills then issued Tallo a citation and notice to appeal for "DUI - Pending Urine - Checkpoint;" citing him in violation of Fla. Stat. §316.193.
   a.   Mills did this even though he knew that Tallo's breath results were "0.00" and
   b.   There was no evidence of bad driving.
   c.   Further, Mills wrote out a criminal Citation that required Tallo to appear before a County judge in court room 1A on 9/21/09.
   d.   Mills knew or should have known that the FDLE had not promulgated any rules nor had an accurate or approved test to determine drug or alcohol results that would support a DUI from such Urine testing;
   e.   That he could not perform an arrest or prosecute a criminal charge on mere suspicion of a 'pending' crime.

45.   At that point Tallo was free to leave the checkpoint and was told that his passenger girlfriend Mary DeBennedetta could drive him home.  However, by then, Tallo had been detained more than one and a half hours and his car had been towed by police directive. When Mary complained aloud and inquired, how they were suppose to get home, Officer Mills grabbed her by the wrist and told her to calm down or she would be arrested for obstruction of justice.

46.   When Tallo moved in Mills direction and told him to unhand Mary, Sgt. Kolak stopped him and told both he and Mary that they would be arrested if they did not calm down, stop complaining and just leave peaceably.

47.   Tallo had a well founded fear that imminent violence was about to take place and that Kolak had the present ability to unlawfully arrest each of them and put them in jail, Tallo and Mary walked away from the check point to Mary's house in Cape Coral, more than two miles away from the checkpoint site.

48.   Based upon information and belief, Cape Coral police officers, together with Unknown Law Enforcement Officers of the Multi-Jurisdictional Traffic Task Force either
   a.   negligently searched and removed Tallo's vehicle or

    b.      Intentionally violated Tallo's Fourth, Fifth and Fourteenth Amendment rights to privacy and the substantial protected property interest of his car and personal belongings,

    c.      And caused the car and personal belongings to be seized and

    d.      The act of impounding Tallo's car immediately after the 'stop' of his vehicle by Officer Mills without want of probable cause was contrary to the operation plan filed in this Sobriety Check point and to United States and Florida Constitutional law.

49.     Based upon these intentional or negligent representations by Kolak and Mills, the State of Florida filed an information against Tallo charging him with a criminal count of  DUI, in violation of Fla. Stats. §316.193-a special first degree misdemeanor.

50.     At the time each officer made these representations, stopped, searched, seized the property and person of Tallo, each police officer knew or should have known that Tallo's had well established constitutionally protected liberty interest in his Freedom, person, property and right to use the highways of Florida without fear of unreasonable stops, searches and seizure.

51.     On October 30, 2009, the charges were *nollo prosequi* by the State of Florida.

52.     On account of Defendants' unlawful conduct, Plaintiff suffers and continues to suffer, loss of his civil rights, freedom, loss of sleep, severe emotional distress, mental angst, loss of reputation, expenses related to the impoundment of his vehicle in the amount of $161.50 and other incidental and consequential damages past and future medical costs, loss of trust and confidence in law enforcement and a fear of a lack of safety in his community from illegal actions by police.

53.     At all times relevant to this complaint, Wilhelm is a 62 year old male with no criminal history or negative contacts with law enforcement.

54.     On March 13, 2009, several months prior to the Sobriety Check point that stopped Tallo and conducted by the Multi-jurisdictional Traffic Task Force and the City of Cape Coral, and managed by the Cape Coral Police Department (the Hosting agency), Plaintiff James Wilhelm was stopped by Officer Edward Schliff, a Cape Coral Police officer assigned to the task force.

55.     After a day of golf and spending the evening with friends, Wilhelm was returning to his home in Cape Coral, Lee County, Florida, and stopped his 2008 black corvette at a sobriety Check point as directed by the task force under color of law.

56.     Edward Schliff asked for Wilhelm's license.  Wilhelm dropped the papers from his wallet onto the ground and while picking up his papers Schliff asked if he had been drinking and Wilhelm said "absolutely not."  When Schliff asked where Wilhelm was coming from,

Wilhelm told him 'some friends where he had spent the day and had dinner.'

57.   Without any reasonable cause, and in violation of the check point plan, Schliff then ordered Wilhelm out of the car and ordered Wilhelm to take a test.
   a.   Schliff took a pen light out and told Wilhelm to follow it without moving his head.  Wilhelm complied and
   b.   then Schliff said another officer is going to give you some other tests.

58.   Wilhelm was then escorted by Officer Schliff over to an area where Officer Roody asked Wilhelm if he had any concerns about doing a test and Wilhelm explained he had open heart surgery recently and he asked them to give him a breath or blood test.  Wilhelm was then ordered to conducted a series of field exercises and Officer Roody noted the results as follows:

   a.   HORIZONTAL GAZE NYSTAGMUS.  Wilhelm wears glasses and removed them for the test which showed that although he was able to follow the stimulus, had equal size pupils and was able to track with each eye equally, he had a lack of smooth pursuit in both eyes, a distinct and sustained Nystagmus at maximum deviation in both eyes.  He scored four (4) decision points, indicating to the officer that he failed this test.
   b.   WALK AND TURN.  Wilhelm was unable to perform in his golf cleats and removed his shoes to perform the test barefoot.  Officer Roody noted that he missed heel to toe, stepped off the line and raised his arms for balance and as a result, he failed the test.
   c.   ONE LEG STAND.  Wilhelm was barefoot. Officer Roody noted that he swayed and used his arm for balance while holding his right foot in the air and hopped slightly.  Again, Roody noted that Wilhelm failed to perform according to the standard.

59.   After being detained for nearly one hour, Schliff arrested Wilhlem and charged with "DUI," a violation of Fla. Stats. §316.193 at six (6) minutes after midnight on March 14, 2009.
   a.   Wilhelm was the told he was under arrest for DUI and
   b.   He was allowed to put his shoes back on before being formally arrested by Schliff.
   c.   No implied consent was read to him despite the fact that he was constantly asking 'what is going on here?'
   d.   Wilhelm was then escorted twenty yards to an area with tables and chairs and sat down.

60.   While handcuffed and  sitting in a chair waiting to have his breath tested, Wilhelm began complaining of severe chest pains and reminded the Cape Coral Police officers including Schliff, that he had recently had open heart surgery.

61.   When the EMT arrived, an IV was attempted and Wilhelm demanded a blood test to confirm he had no alcohol or drugs in his system.

62.   Wilhelm was taken by ambulance to the Cape Coral Hospital and examined by an emergency room nurse and other personnel.

63.   While at the hospital, Wilhelm requested again to have his blood tested and the officer reluctantly agreed.  Willhem then received a 'blood test' to determine blood alcohol and any other substance in his blood indicative of driving under the influence of such substance to the point his normal faculties were impaired.

64.   Officer Schliff stated to other persons and wrote in his report that he arrested Wilhelm 'based on the totality of his observations, that
      a.     Wilhlem's eyes were watery and glassy,
      b.     he was clumsy,
      c.     coordination poor,
      d.     Had slurred speech and
      e.     that he smelled a faint odor of alcohol.'
      f.     At the time he made these statements he knew them to be false.

65.   Schliff stated to Wilhelm after he saw his license that he was surprised at how old he was and that he did not look his age, 62.

66.   Wilhelm was then imprisoned in the Lee County Jail for several hours.

67.   Subsequent to the transportation of Wilhelm to the Jail, he was tested by a medical staff member of the department who stated his 'blood pressure was through the roof and did he have his medication with him.'  Wilhelm stated he did not have high blood pressure medication because he did not have a high blood pressure problem that he was aware until now.

68.   Upon release from the Jail, Wilhelm was given his license back but ordered to appear in court to defend against the criminal charges.

69.   Wilhelm posted a $750 bond with Richard Orin Opperman, d/b/a Alpha Omega Bail Bonds who then recommended to him an attorney named Matthew M. McDowell, a licensed attorney practicing criminal law in the Southwest Florida area.

70.   Unbeknownst to Wilhelm, the attorney and bondsman had an illicit agreement for referrals contrary to Florida Law.

71.   Based upon the referral of the bonding company owned and operated by Richard Orin Opperman d/b/a Alpha Omega Bail Bonds, duly registered with the State of Florida, Wilhelm paid the attorney about $1,500 to represent him in his criminal matter.

72.   Defendant MacDowell did not perform as any reasonable attorney would have performed under the circumstances of this case.  MacDowell demanded and Wilhelm paid $1,500 for legal representation.

73.   Based upon information and belief, MacDowell shared his legal fee with Oppermann without his knowledge or consent and contrary to Florida Law and the Professional rules of conduct governing lawyers.

74.   Further, MacDowell failed to communicate with Plaintiff after payment for representation and made only two court appearances.  MacDowell failed to take any motions, interview any witnesses and did not discuss any defenses or even the facts of the case with his client, Wilhelm.

75.   Moreover, when requested by Wilhelm to expunge his record after disposition of the case, MacDowell agreed but did not perform and refused to communicate further with Wilhelm.

76.   While Wilhelm was represented by MacDowell and on account of MacDowell's failure or refusal to communicate, Wilhelm entered into and executed a release with the city of Cape Coral for civil claims he had against the city and individual police officers who caused him injury including personal and civil rights and as a result of MacDowell's negligent conduct Wilhelm was damaged thereby.

77.   On account of the Defendants unlawful behavior, Plaintiff Wilhelm suffered and continues to suffer damages including loss of sleep, mental angst, faith in the legal system, severe emotional distress, medical costs including to Lee County EMS, in the amount of $554.00 and other incidental and consequential damages, attorneys fees and costs.

78.   The day after his birthday, Wilhelm's case was "Nolle Prosequi" by the State of Florida in open court.

79.   At no time during the events described above, were plaintiffs Wilhelm, Tallo or Bennedetta under the influence of alcohol or drugs to the point his or her normal faculties were impaired, nor were they intoxicated, incapacitated, a threat to the safety of themselves or others, or disorderly.  None had committed or were about to commit any criminal offenses.

80.   At the time of the detainment and arrests of Tallo and Wilhelm, or the detainment of Debennedetta, the defendant police officers had no warrant for the arrests of plaintiffs Tallo and Wilhelm, no probable cause for the arrests of plaintiffs Tallo and Wilhelm, an no legal excuse or cause to unreasonably detain and seize the persons of the plaintiffs Tallo, Bennedetta and Wilhelm, and no lawful reason to seize the property of Tallo and

Wilhelm.

81.  At all times during the events described above, the defendant poolice officers were engaged in a joint venture.  The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

82.  As a direct and proximate result of the said acts of the defendant officers, the plaintiffs Tallo and Wilhelm and DeBenedetta suffered the following injuries and damages:

    a.    Violation of his or her constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution be be free from an unreasonable stop, search and seizure of his or her person;

    b.    Loss of physical liberty;

    c.    Physical pain and suffering and emotional trauma and suffering requiering the expenditure of money for treatment;

    d.    Incidental and consequential damages including towing and impoundment fees, conversion of personal property, reasonable attorney fees and other costs to defend in a criminal action;

83.  The actions of the defendant officers violated the following clearly established and well settled federal constitutional rights of plaintiffs Vincent Tallo and James A. Wilhelm, and Mary Debennedetta:

    a.    Freedom from unlawful and unreasonable stop and detention;

    b.    Freedom from unreasonable seizure of person and

    c.    Freedom from unreasonable seizure of property (except DeBennedetta) and

    d.    Freedom from unreasonable and excessive and unjustified force against person;

*84.*  There is no adequate remedy at law for the deprivations of Plaintiffs' constitutional rights and loss of freedom and such acts by the defendants city, police departments, multi-jurisdictional task force and individual officer defendants are capable of repetition.

## *CAUSES OF ACTION*

*COUNT **I** – violation of 42 U.S.C. 1983 et seq. – "Civil Rights Act" – (a) Vincent Tallo against Defendants Officers Alan Kolak, and Officer Matthew Mills and Cape Coral Police Department*

85.  Plaintiffs re-assert, repeat and incorporate by reference each and every allegation of paragraphs 1 through 53 and 76 through 84 against the Defendants Officers Alan Kolak and Officer Matthew Mills by reference as though fully pled herein.

86.  The customs, policies, pattern and practices of the Cape Coral Police Department in operating these sobriety check points without properly trained or supervised personnel evidences a substantial disregard for the well established constitutionally protected rights

of plaintiffs and other similarly situated citizens to well known liberty interests including freedom, property and to operate on the highways of Florida without fear or unreasonable stops, searches and seizures.

87.     On account of the unreasonable and unlawful conduct of Kolak and Mills as alleged in the foregoing paragraphs, Tallo suffered and continues to suffer injury and damages to his person and civil rights.

88.     Plaintiffs Tallo claims damages for the injuries set forth above under 42 U.S.C. §1983 against Officer Defendants Kolak and Mills for violation of his or her constitutional rights under color of law.

***COUNT II*** – *violation of 42-U.S.C. §1983 et seq. - "Civil Rights Act" –plaintiff James Wilhelm against defendant individual officer(s) Edward Schliff and Cape Coral Police Department*

89.     Plaintiffs re-assert, repeat and incorporate by reference each and every allegation of paragraphs 1 through 22 and 53 through 84 against the individual Officers Alan Kolak and Officer Edward Schliff and Cape Coral Police Department, by reference as though fully pled herein.

90.     The customs, policies, pattern and practices of the Cape Coral Police Department and the manner of operating these sobriety check points without properly trained or supervised personnel evidences a substantial disregard for the well established constitutionally protected rights of plaintiffs and other similarly situated citizens to well known liberty interests including freedom, property and to operate on the highways of Florida without fear or unreasonable stops, searches and seizures.

91.     On account of the unreasonable and unlawful conduct of Kolak and Mills as alleged in the foregoing paragraphs, plaintiff suffered and continues to suffer injury and damages to his person and civil rights.

92.

93.     Plaintiff Wilhelm claims damages, for injuries set forth under 42, U.S.C. § 1983 against Officers Edward Schliff and Alan Kolak for violation of his constitutional rights under color of law.


***COUNT III*** – *Assault and Battery against individual defendants* - (a) Tallo

94.     Plaintiff Tallo re-asserts, repeats and incorporates by reference each and every allegation of paragraphs 1 through 53 and 76 through 84 against the Defendants Officers Alan Kolak and Officer Matthew Mills, by reference as though fully pled herein.

95.     Defendant Mills assault and battered plaintiff.

96.     Defendant Kolak Assaulted Plaintiff.

97.     Plaintiffs Tallo had a well founded fear of imminent violence when each was threatened to be arrested for obstruction of justice by Sgt. Kolak, who had the apparent ability where was a uniformed police officer with a gun and in charge of the check point on September 4, 2009.

98.     As a result of this assault and battery as alleged in the foregoing paragraphs, plaintiffs Tallo has suffered damages aforesaid.


COUNT IV - Assault and Battery against Defendant Schliff – by Wilhelm

99.     Plaintiffs re-assert, repeat and incorporate by reference each and every allegation of paragraphs 1 through 22 and 53 through 84 against the individual Officer Edward Schliff and Multi-Jurisdictional Traffic Task Force, by reference as though fully pled herein.

100.    Defendant Edward Schliff assault and battered plaintiff James A. Wilhelm.

101.    James A. Wilhelm had a well founded fear of imminent violence where he was threatened to be arrested and was arrested by Edward Schliff.

102.    As a result of this assault and battery as alleged in the foregoing paragraphs, plaintiffs Wilhelm has suffered damages aforesaid.


COUNT V - False Arrest and Illegal Detention against individual Defendants Kolak and Mills- by plaintiff Tallo

103.    Plaintiff Vincent Tallo re-asserts, repeat and incorporate by reference each and every allegation of paragraphs 1 through 53 and 76 through 81 against the individual Officers Alan Kolak and Matthew Mills and Multi-Jurisdictional Traffic Task Force, by reference as though fully pled herein.

104.    Defendants Officers Kolak and Mills illegally arrested and detained Plaintiff Tallo.

105.    As a result of this illegal arrest and detainment, plaintiff has suffered damages aforesaid.

COUNT VI - False Arrest and Illegal Imprisonment against individual Defendant Schliff – Wilhelm

106.    Plaintiff Wilhilem re-assert, repeat and incorporate by reference each and every allegation of paragraphs 1 through 22 and 53 through 84 against the individual Officer

Edward Schliff and Multi-Jurisdictional Traffic Task Force, by reference as though fully pled herein.

107.   Defendant Officer Schliff illegally arrested and illegally imprisoned plaintiff Wilhelm.

108.   As a result of this illegal arrest and detainment, plaintiff has suffered damages aforesaid.

*COUNT VII* - Abuse of Process against Defendants – (a) Tallo and ( b) Wilhelm

109.   Plaintiffs Tallo and Wilhilem re-assert, repeat and incorporate by reference each and every allegation of paragraphs 1 through 81 against the individual Officer Edward Schliff and Multi-Jurisdictional Traffic Task Force, by reference as though fully pled herein

110.   Defendants individual officers Alan Kolak, Edward Schliff, and Matthew Mills and police department defendants under the auspices of their respective municipal governments City of Cape Coral and City of Fort Myers, abused process of law against Plaintiffs by prosecution of a DUI they knew or should have known did not have merit.

111.   As a result of these acts or omissions to act, plaintiff has suffered damages aforesaid.

*COUNT VIII* - Intentional misrepresentation against individual Defendants – Wilhelm

112.   Plaintiff Wilhilem re-assert, repeat and incorporate by reference each and every allegation of paragraphs 1 through 22 and 53 through 81 against the individual Officer Edward Schliff and Multi-Jurisdictional Traffic Task Force, by reference as though fully pled herein.

113.   Defendant Schliff, at the time he made representations to other officers and in his report as alleged in the aforementioned paragraphs particularly that 'plaintiff was unsteady, clumsy, had glassy watery eyes, was flushed, had slurred speech, and that he could smell a faint odor of alcohol, he knew these representations to be false.

114.   Plaintiff was arrested, charged and prosecuted for DUI, a criminal offense as a result of these intentional misrepresentations by Schliff.

115.   As a result of these acts, plaintiff suffers and continues to suffer damages as aforesaid.

*COUNT IX* - Intentional Misrepresentation – against individual Defendants - by Tallo

116.   Plaintiff Vincent Tallo re-asserts, repeat and incorporate by reference each and every allegation of paragraphs 1 through 53 and 76 through 81 against the individual Officers Alan Kolak and Matthew Mills by reference as though fully pled herein.

117.   At the time he made representations as alleged in the aforementioned paragraphs to other

officers, Defendant Matthew Mills knew these representations to be false, particularly that 'plaintiff was unsteady, clumsy, had glassy watery eyes, was flushed, had slurred speech, and that he could smell a moderate odor of alcohol, and that he fell out of the car and had to hold onto the door.

118.   Further, Kolak intentionally and with malice aforethought, represented that the results of a drug analysis test on a urine sample belonging to plaintiff was positive for the presence of some drug that indicated he was under the influence of such substance to the point his normal faculties were impaired.  At the time he made this representations he knew them to be false and he knew that Tallo would be charged and prosecuted for a criminal offense, a DUI.

119.   As a result of Defendants unlawful and intentional acts and omissions to act, plaintiff suffered damages as aforementioned.

*COUNT X* - negligent misrepresentation against individual Defendants – Wilhelm

120.   Plaintiff Wilhilem re-assert, repeat and incorporate by reference each and every allegation of paragraphs 1 through 22 and 53 through 81 against the individual Officer Edward Schliff and Multi-Jurisdictional Traffic Task Force, by reference as though fully pled herein.

121.   Defendant Schliff, at the time he made representations to other officers and in his report as alleged in the aforementioned paragraphs particularly that 'plaintiff was unsteady, clumsy, had glassy watery eyes, was flushed, had slurred speech, and that he could smell a faint odor of alcohol, he should have known these representations to be false.

122.   Plaintiff was arrested, charged and prosecuted for DUI, a criminal offense as a result of these intentional misrepresentations by Schliff.

123.   As a result of these acts, plaintiff suffers and continues to suffer damages as aforesaid.

*COUNT XI* - Negligent Misrepresentation – against individual Defendants - by Tallo

124.   Plaintiff Vincent Tallo re-asserts, repeat and incorporate by reference each and every allegation of paragraphs 1 through 53 and 76 through 81 against the individual Officers Alan Kolak and Matthew Mills and Multi-Jurisdictional Traffic Task Force, by reference as though fully pled herein.

125.   Defendant Matthew Mills, at the time he made representations to other officers and in his report as alleged in the aforementioned paragraphs particularly that 'plaintiff was unsteady, clumsy, had glassy watery eyes, was flushed, had slurred speech, and that he could smell a moderate odor of alcohol, and that he fell out of the car and had to hold onto the door, he should have known these representations to be false.

126. Further, Kolak misrepresented that the results of a drug analysis test on a urine sample belonging to plaintiff was positive for the presence of some drug that indicated he was under the influence of such substance to the point his normal faculties were impaired.  At the time he made this representations he should have known them to be false.

127. As a result of Defendants acts and omissions to act, plaintiff suffered damages as aforementioned.

*COUNT XII* - 42 U.S.C. §1983 – against (a) CITY OF CAPE CORAL and (b) Cape Coral Police Department – by Plaintiffs (1) Tallo and (2) Wilhelm

128. Plaintiff Vincent Tallo re-asserts, repeat and incorporate by reference each and every allegation of paragraphs 1 through 53 and 76 through 84 against the individual Officers Alan Kolak and Matthew Mills and unknown officers by reference as though fully pled herein.

129. Prior to September 4, 2009 and to the present, the City of Cape Coral, City of Fort Myers and their respective police departments (Cape Coral Police Department and Fort Myers Police Department) and a Multi-Jurisdictional Traffic Task Force developed and maintained policies and procedures or customs violating rights of persons including Plaintiffs' fundamental and substantive rights.

130. Further, the custom pattern and practice of Cape Coral Police Department in making warrantless arrests based upon mere suspicion violated certain delineated liberty interests of plaintiffs particularly where they issue a ticket or notice to appear for a "pending" crime of DUI—and persons must bond out of jail, hire an attorney and appear in court to defend themselves.

131. It was the policy or custom of these Defendants to inadequately and improperly train and supervise and investigate and conduct 'sobriety check points' within these jurisdictional limits of the city and task force including, but not limited to, the following:

a. The arbitrary stop of persons at check points where one officer feels traffic is halted an unreasonable time;
b. The stop of every vehicle on a street without regard to safety of persons or property;
c. The use of check points to train officers on DUI techniques without direct supervision of the trainee;
d. Failure of the City to ensure the operational plan for the sobriety check point is carefully adhered to;
e. The towing of vehicles at the owners expense where their was no evidence of impairment;
f. The failure of the city and departments to have some accommodation built into the exercises for persons over the age of 50;

g.    The charging of individuals with 'pending' criminal acts based upon a mere suspicion that they were in violation of the law;
h.    The failure to provide accommodation to any passengers who are detained;
i.    The policy to allow officers discretion to imprison some persons who are charged with DUI and not others;

132.    It was the policy and or custom of the City of Cape Coral to inadequately supervise and train its police officers, including the defendant officers, thereby failing to adequately discourage further constitutional violations of the part of its police officers.  The City of Cape Coral and City of Fort Myers, did not require appropriate in-service training or re-training of the officers who were known to have engaged in police misconduct or who needed training in DUI procedures.

133.    As a result of the above described policies and procedures and customs, police officers of the City of Fort Myers, and of the City of Cape Coral and who participate in the Multi-Jurisdictional Traffic Task Force including the defendant officers , believed that their actions would not be properly monitored by supervisory officers that such misconduct would not be investigated or sanctioned, but would be tolerated.

134.    The above described policies and customs demonstrated a deliberate indifference on the part of the policy makers of the City of Cape Coral, Cape Coral Police Department, and the Multi-Jurisdictional Traffic Task Force to the well established constitutional rights of the persons within the City limits and were the direct and proximate cause of the violations of the Plaintiffs' rights alleged herein.

*COUNT **XIII** - Violations of Fla. Stats. §768.28  et seq. — against all Defendants– by (1) Tallo (2) Wilhelm –*

135.    Plaintiffs re-assert, repeat and incorporates by reference each and every allegation of paragraphs 1 through 81 as though fully pled herein.

136.    The aforesaid allegations constitute negligence and but for the negligence of the agent individual police officers and the policies and training of the Department, Tallo, Wilhelm and DeBennedetta and persons similarly situated would not have been injured as aforesaid in the foregoing paragraphs and damaged aforesaid.

137.    None of defendant police officers acts were malicious or in bad faith.

138.    On account of defendants conduct, plaintiff and persons similarly situated have suffered and continue to suffer actual and compensatory damages including loss of liberty, freedom of movement, costs, attorney's fees and mental angst.

*COUNT **XIV**– violation of public accommodation - disability and age discrimination . – **18 U.S.C. 1985 SECTIONS 501 AND 504 REHABILITATION ACT- DEFENDANT CITIES [COCC AND MTTF]***

139.    Plaintiffs re-assert, repeat and incorporates by reference each and every allegation of paragraphs 1 through 81 against (a) City of Cape Coral and (b) Cape Coral Police Department, as though fully pled herein.

140.    The City of Cape Coral and City of Fort Myers and defendant ( c) MTTF receives public assistance from the federal government in the form funds designated for road and highway improvements and public financial assistance and through general funding in aid of municipalities and law enforcement agencies through federal grants and financial assistance through federal acts to fight drug and alcohol related crimes.

141.    The aforesaid conduct of Defendant Department violated Title II and sections 501 and 504 of the Rehabilitation act where the CITY conducts a public benefit in the form of a 'sobriety check point' and fails to provide accommodation to persons over the age of 50 who are unable to perform the field sobriety exercises regardless of whether under influence of any drug or alcohol and as a result are charged with a crime merely for being unable to perform some physical test.

142.    Defendants policy and practice in not accommodating elderly or otherwise disabled persons precludes or inhibits their use of the public roadways for fear of being charged with a crime and as such are denied equal protection of the law in violation of their rights under the Fifth and Fourteenth Amendments to the United States Constitution.

143.    Based upon the aforesaid Acts and omissions to act by Defendant Cities, plaintiff Tallo and Wilhelm and persons similarly situated are harmed and continue to be harmed where and lost public access and other benefits and loss of opportunities for career advancement and suffered severe emotional distress.

COUNT XV – *Plaintiff Wilhelm against Edward Schliff for negligent Infliction of Severe Emotional Distress*

144.    The plaitniff re-alleges all of the foregoing allegations in paragraphs 1 through 19,

145.    Defendant owes plaintiff a special duty of care as a sworn law enforcement officer and public servant to tell the truth and act as any reasonable law enforcement officer under the circumstances particularly to tell the truth in his statements and reports to others when in the course of his duty as a police officer.

146.    Defendant breached his duty to plaintiff.

147.    The aforesaid acts, omissions and intentional conduct of Defendant Schliff, who operated illegally from his special position of public trust asa 'sworn officer of the law', constitutes extreme and outrageous conduct in a law abiding society that trusts law

enforcement to protect and serve and particularly affected the plaintiff Wilhelm a vulnerable person who is a law abiding citizen with no criminal history and who is over the age of 60.

148.   As a result of defendant's acts or omissions to act, plaintiff suffers and continues to suffer injury and damages such as mental angst and severe emotional distress where he suffered physical manifestation of said conduct where he suffered chest pains requiring medical attention and treatment and he continues to see a physician and incur medical expenses.

COUNT XVI – *Plaintiff Tallo against Matthew Mills for Negligent Infliction of Severe Emotional Distress*

149.   The plaintiff re-alleges all of the foregoing paragraphs 1 through

150.   Defendant owes plaintiff a special duty of care as a sworn law enforcement officer and public servant to tell the truth and act as any reasonable law enforcement officer under the circumstances particularly to tell the truth in his statements and reports to others when in the course of his duty as a police officer.

151.   Defendant breached his duty of care to plaintiff.

152.    The aforesaid acts, omissions and intentional conduct of Defendant Mills, who operated illegally from his special position of public trust as a 'sworn officer of the law', constitutes extreme and outrageous conduct in a law abiding society that trusts law enforcement to protect and serve and particularly affected the plaintiff Tallo vulnerable class of persons who are law abiding citizens with no criminal history and who is over the age of 70.

153.   As a result of defendant's acts or omissions to act, plaintiff suffers and continues to suffer injury and damages such as mental angst and severe emotional distress where he suffered physical manifestation of said conduct and he continues to see a physician and incur medical expenses.

COUNT XVI I– *Plaintiff Wilhelm against Defendants (a) Richard Orin Oppermann d/b/a Alpha Omega Bail Bonds and (b) Attorney Matthew MacDowell under FLORIDA's DECEPTIVE AND UNFAIR TRADE PRACTICES ACT 501.204 et seq.*

154.   Plaintiff Wilhelm re-alleges all of the foregoing paragraphs 7, 9 through 23 and 54 through 81 and incorporates them by reference as though fully pled herein against Defendants Richard Orin Oppermann d/b/a Alpha Omega Bail Bonds and Matthew K. MacDowell, a Florida licensed attorney.

155.   At all times relevant to this complaint Richard Orin Oppermann d/b/a Alpha Omega Bail Bonds was a licensed bail bond agent subject to the laws of Florida and Matthew K.

MacDowell, a Florida licensed attorney subject to the laws of Florida governing bail bond agents and attorney conduct as defined under Fla. Stats. Section 648.44(2)(e) (Fla. 2000) and the professional rules of conduct governing licensed attorneys.

156. The aforesaid conduct of MacDowell and Oppermann d/b/a/ as Alpha Omega Bail Bonds in referring each other violated Florida law and the rules of professional conduct by the attorney under Fla. Stats. 648.44 and subsection (2)(e) and other laws and regulatory conduct.

157. The aforementioned allegations are unfair trade practices as defined under Florida law and in violation of Ch. 501.204, Florida Deceptive and Unfair Trade Practices Act, or otherwise are deceptive acts.

158. On account of defendants acts and omissions to act plaintiff was injured and suffered aforesaid damages therefrom.

COUNT XVI II– *Plaintiff Wilhelm sues Defendant Attorney Matthew MacDowell* –for professional malpractice.

159. Plaintiff Wilhelm re-alleges all of the foregoing paragraphs 7, 9 through 23 and 54 through 84 and incorporates them by reference as though fully pled herein against Defendant Matthew K. MacDowell, a Florida licensed attorney.

160. The aforementioned acts and omissions to act as alleged by MacDowell are violations of the agreement between attorney and client and are professional malpractice by Matthew K. MacDowell, a Florida licensed attorney.

161. On account of MacDowell's actions or omissions, plaintiff is damaged thereby.

<u>JURY DEMAND</u>

162. PLAINTIFFS, PURSUANT TO THE UNITED STATES CONSTITUTION DEMANDS A TRIAL BY JURY IN ALL MATTERS SO TRIABLE.

**WHEREFORE** Plaintiffs demand judgment against defendant and respectfully asks this Honorable court to :

(1) issue a judgment pursuant to 28 U.S.C. § 2201 declaring:
      (a) that defendant violated the rights of plaintiff under
            (i) 42 U.S.C. §1983;
            (ii) Fla. Stats. § 768.28 et seq. and 501.204;
            ( iii) 18 U.S.C. 1985 and under
            ( iv) sections 501 and 504 of the Rehabilitation act;

(v) that Departments Cities and its employees, agents and servants violated Civil rights and violated Florida common law.

(2) issue a mandatory injunction pursuant to 28 U.S. C. § 2202 and Fed. R. Civ. Proc. Rule 65 requiring:

(a) that Defendant Department effectively plan, develop, undertake, implement and monitor an affirmative action plan, designed to prevent arrest of elderly and disabled individuals where they are not in violation of laws merely because they are physically limited in their ability to pass certain tests; and

(d) that defendant the City of Cape Coral and City of Fort Myers be enjoined from further violations of the rights of individuals in plaintiffs class.

(3) award plaintiff all actual damages and other benefits and such other nominal, general, compensatory and punitive damages as may be available under the alleged causes of action.

(4) allow plaintiff his costs, disbursements, and reasonable attorney fees as may be available under the alleged causes of action.

(5) Assume continuing and indefinite jurisdiction in order to ensure compliance with the terms of the mandatory injunction requested herein;

(6) grant such additional relief as this Honorable Court deems just and equitable.


Respectfully submitted by and through undersigned Counsel:

\s\ Michelle Erin Berthiaume
_____
Michelle Erin Berthiaume, Esquire
Florida Bar No. 0193402


## CERTIFICATE OF SERVICE

I CERTIFY a true and correct copy of the foregoing document has been sent via U.S. First Class mail, by electronic means or otherwise delivered to the following persons and entities on Distribution list "A"—attached ;  this 20th day of March , 2010.

By attorney:      /s/ Michelle Berthiaume
                  _____
                  Michelle Erin Berthiaume, Esquire,
                  BERTHIAUME & KELLY, P.A.

2551 Fourth Street
Fort Myers, FL  33901
(239) 415-9907 Telephone
(239) 415-9921 Facsimile

Distribution List A:

Attorney for the City of Cape Coral:
Attorney Robert C. Shearman,
HENDERSON FRANKLIN STARNES & HOLT,
PO Box 280
Fort Myers, FL  33902-0280
(239) 344-1346 Telephone
(239) 344-1501 Facsimile

Mr. Richard Orin Oppermann,
d/b/a Alpha Omega Bail Bonds
4066 Evans Avenue
 Fort Myers, FL  33901
(239) 277-5747

Alpha Omega Bail Bonds
c/o Mr. Richard Oppermann,
7461 Winkler Road,
Fort Myers, FL
 (239) 337-2663

Mr. Matthew K. McDowell,
Attorney At Law
13180 N. Cleveland Ave., Ste. 112,
Fort Myers, FL  33903
(239) 656-4404 Tel.